Steven BAUSTIAN

v.

STATE OF LOUISIANA.

Civil Action No. 95–1072.

United States District Court,
E.D. Louisiana.

June 12, 1996.

---

Steven E. Baustian, New Orleans, LA, Pro Se.

Sandra Ema Gutierrez, Louisiana Dept. of Justice, New Orleans, LA, for Defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Plaintiff Baustian has filed a motion for reconsideration[1] asking this Court to reconsider its earlier ruling granting defendant State of Louisiana's motion to dismiss for failure to state a claim. The state has filed a response in opposition. Having reviewed the motion, the memoranda of the parties, the record, and the law, the Court denies the motion.

### Background

In its ruling entered April 25, 1996, the Court granted defendant's motion to dismiss for failure to state a claim directed at plaintiff's claims arising under the Rehabilitation Act, 29 U.S.C. § 701 et seq., Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., and the Civil Rights Act, 42 U.S.C. § 1983. Rec. doc. 47. Plaintiff now claims that there is an exception to the general rule that an individual with a disability does not include an individual who is currently engaged in the illegal use of drugs, and that he falls into the excepted category of drug users. See 42 U.S.C. § 12210(a) and (c).

### Law and Analysis

■ Although the Federal Rules of Civil Procedure do not particularly recognize the "motion for reconsideration," district courts will often accept such motions as being in the interest of substantial justice. See F.R.C.P. 8(f). However, a motion to reconsider based on recycled arguments only serves to waste the resources of the court. *State of Louisiana v. Sprint Communications Co.*, 899 F.Supp. 282 (M.D.La.1995). Therefore, rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration. *Id.* A motion for reconsideration should not give the losing party the opportunity to simply reargue his losing points and authorities. *Shields v. Shetler*, 120 F.R.D. 123 (D.Colo.1988).

In this case, plaintiff has come forward with copies of various employment manuals, including the Corrections Services Employee

---

1. Plaintiff also filed a motion to alter or amend judgment which this Court will treat as a supplemental memorandum in support of the motion for reconsideration.

Manual, an Employee Assistance Program ("EAP") pamphlet, an Employee Assistance Program Description, and several versions of the Human Resource Management Drug Free Workplace regulations.[2] All of these exhibits are attached to plaintiff's motion to alter or amend judgment. Rec. doc. 50.

 Despite plaintiff's new arguments and evidence in support, the Court must nevertheless again find that he has failed to state a claim. First, plaintiff erroneously contends that referral to the EAP was mandatory. The EAP provides in pertinent part:

> Any time a supervisor believes an employee is adversely affected by problems beyond the employees control (i.e., substance abuse or personal problems), such performance should be documented. In a privately scheduled meeting, the employee will be presented a copy of the documentation citing which aspects of job performance need improvement and identifying performance expectations. At this time, the supervisor will allow the employee the option of participating voluntarily in the EAP or improving problem behavior independently . . .

> Whether or not the employee decides to enter the EAP, the supervisor and employee will agree on a time frame during which the employee's work performance will be monitored to see if it returns to a satisfactory level . . .

> If the employee's work performance does not improve or if another infraction occurs, then it will become mandatory that the employee be referred to the EAP. While it is mandatory that the supervisor make this referral, it is not mandatory that the employee enter the program.

EAP Program Description, pgs. 2–3. Plaintiff apparently believes these provisions require that his supervisor actually place him in a drug recovery program because he was addicted to marijuana. There are several errors in his reading of this program's terms.

First, under the express terms of EAP, the supervisor must initially notice a deficiency in the employee's work performance. The supervisor must bring the noted deficiency to the employee's attention and give the employee the option of participating in the EAP. If the employee's work product does not improve, the supervisor must refer the employee to the EAP. By the clear wording of the provision, the supervisor may not require the employee to participate in the EAP.

In this case, there is no allegation that any supervisor noticed a performance deficiency, or that any deficiency meeting was ever held or even required to be held. To the contrary, plaintiff alleges that he received excellent performance reviews. Even if there had been a deficiency which was noted and not corrected, plaintiff's supervisor still could not force him into the EAP. Employee application and participation in the EAP are clearly voluntary. Therefore, plaintiff's argument that employer-initiated placement in the EAP was mandatory is clearly misplaced.

 In a similar vein, plaintiff argues that he is protected by 42 U.S.C. 12210(c) which provides in pertinent part:

> Notwithstanding subsection (a) and section 511(b)(3) [42 USCS § 12211(b)(3) ], an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs if the individual is otherwise entitled to such services.

Based on the above provision, plaintiff argues that, as a current drug user, he was "entitled" to participate in his employer's EAP. Plaintiff's reliance on this provision is misplaced.

The clear purpose of this provision is to prevent covered entities from discriminating in their providing drug rehabilitation services to current drug users.[3] However, section

---

2. The Court is assuming, *arguendo,* that these manuals form an employment contract between plaintiff and the State of Louisiana.

3. Although there are no cases interpreting this clause, the Court speculates that the referred to discrimination could be in the form of unlawfully denying rehabilitation services to certain categories of drug users, i.e., treating heroin or cocaine addicts, but refusing to treat alcoholics. Another possibly discriminatory denial of rehabilitation could be in the treatment center's accepting only those drug users who have the highest chances of successful rehabilitation.

12210(c) requires that the drug user first be "entitled" to receive the health or drug rehabilitation services. In order for a employee drug user to be entitled to participate in his employer's rehabilitation program, the employee must first apply for the program and meet the objective admissions criteria of the program.

In this case, plaintiff admits that he never contacted the Department of Corrections EAP for help, although he now complains that he was entitled to treatment simply by virtue of his being employed by the Department of Corrections. If plaintiff had properly applied for admission in his employer's EAP and had been turned away or rejected by the EAP, then he might have a claim. Clearly section 12210(c) is not intended to permit an employee to sit idly by, knowing that the EAP exists but refusing to seek self-help, but then to offer its protections to the employee who is terminated because he violated his employer's drug policy. For the above reasons, the Court cannot find that the plaintiff was "entitled" to any health or rehabilitative services offered by his employer.

In sum, the Court finds that Baustian's position is untenable: he claims that he was discriminated against because his employer did not force him into a drug abuse treatment program. At the same time, he admits that his employers had not noticed any performance problems arising from any drug abuse. Even if they had, the EAP rules clearly state that participation in the EAP could only be suggested, not required. Had he applied and been turned down, perhaps he would have a claim. But not having applied in the first place, he cannot now argue that he was unlawfully discriminated against because he wasn't allowed to participate in the Department of Corrections EAP.

Although it is not necessary for this ruling, the Court will address plaintiff's argument that the state violated his rights by not drug testing him after he was involved in an automobile accident. The State Drug Free Workplace regulations require drug testing after an employee is involved in an accident that results in death, bodily injury, or property damage. Plaintiff's complaint contains no allegation that his automobile accident resulted in death, bodily injury, or property damages. Therefore, even taking all of plaintiff's allegations as true, he has failed to state a claim that the state was required to perform any drug testing of him.

Accordingly,

**IT IS ORDERED** that plaintiff's motion for reconsideration is **DENIED.**